WILLIAM M. GORMAN, plaintiff, v. KAREN F. ADAMS et al., defendants.

KAREN F. ADAMS et al., cross-petitioners, appellants, v. CITY OF CEDAR RAPIDS, cross-defendant, appellee.

No. 51875.

June 14, 1966.

James W. Crawford and Gene V. Kellenberger, both of Cedar Rapids, for cross-petitioners-appellants.

David F. McGuire, City Attorney, and James R. Snyder, Assistant City Attorney, both of Cedar Rapids, for cross-defendant-appellee.

BECKER, J.—This is a negligence action for property damage by plaintiff William M. Gorman against defendant Karen F. Adams et al. Defendants cross-petition against the City of Cedar Rapids for indemnity and contribution and also allege their original claim for damages to their automobile. Cross-defendant City of Cedar Rapids appeared and moved to dismiss the cross-petition relying upon the doctrine of governmental immunity and upon the failure of cross-petitioner to state a cause of action. The motion was sustained generally.

This action grows out of an intersection collision between plaintiff Gorman and defendant Adams. The plaintiff alleges that the intersection of First Avenue West and First Street West in Cedar Rapids is controlled by an electric traffic control signal light arrangement; he entered the intersection with the green light proceeding in a westerly direction, defendant driver, driving in an easterly direction, without proper signal or warning, left her lane of traffic and made a left turn northeast into the westbound lane of traffic, negligently blocking the westbound traffic in which plaintiff's vehicle was traveling in such manner as to cause the collision. Defendants denied generally and obtained authority to file a cross-petition against defendant City of Cedar Rapids.

Cross-petitioners alleged that their driver was operating her automobile approaching the intersection intending to make a left turn, she stopped the vehicle at or near the center of the intersection as required by law, yielded the right-of-way to oncoming traffic traveling on First Avenue until the traffic signal facing her changed from green to yellow and thereupon to red, she assumed that the traffic signal facing the westbound traffic would also change to yellow and thereupon to red halting traffic proceeding on First Avenue, she then proceeded to exe-

cute her left turn, but, in fact, the signal facing westbound traffic on First Avenue did not change from green to yellow and thereupon to red, when the signal facing her made such changes, thus permitting the westbound traffic to proceed through said intersection on a green traffic signal. .

Cross-petitioners further allege that the traffic signal at the intersection was installed a short time prior to the date on which the collision occurred, had new and unusual signaling sequence, not heretofore used at any place in the City of Cedar Rapids, that the City of Cedar Rapids was negligent in installing a traffic signal of new and different signaling sequence without prior warning to the general public as to the nature thereof and the operation feature thereof; in failing to provide a no left turn signal for traffic proceeding easterly on First Avenue at said intersection; in installing a traffic signal with new and different signaling sequence which was confusing and dangerous to motorists generally; and installing said traffic signals which were defective in operation and hence dangerous to the public generally; and installing said traffic signals and regulating the signaling sequence in such a way as to constitute a clear and present danger to motorists generally.

Cross-defendant City of Cedar Rapids filed motion to dismiss and to strike. The court allowed cross-petitioner to amend to plead nuisance. Whereupon defendant City of Cedar Rapids filed motion to dismiss and motion to strike the amendment. Motions to dismiss were based upon two grounds.: 1. The petition failed to state a cause of action against the cross-defendant. 2. The city relies on the doctrine of governmental immunity; i.e., the facts alleged show affirmatively that the cause of action does not come within the exceptions to the rule of governmental immunity. Motion to strike went (1) to the fact that there can be no indemnity since no judgment was asked by the primary plaintiff against the cross-defendant. (2) That the facts affirmatively show that the operation of the lights was not a nuisance, and (3) The facts as alleged affirmatively show there was no nuisance under the law.

The court sustained the motion to dismiss generally and found that there was no need to rule on the motion to strike.

I. Cross-petitioners' first assignment of error concerns itself with the trial court's failure to rule separately on each ground of the motion to dismiss. Cross-defendant answers that since the motion to dismiss was bottomed only on failure to plead a cause of action and assertion of governmental immunity, no prejudicial error was committed.

Since it was unnecessary to pass upon the motion to strike, we are inclined to agree with the city that no harm has resulted. The city in its brief clearly states that the issue is governmental immunity and thus abandons failure to state a cause of action as a ground for dismissal. It would have been better had the court followed rule 118, Rules of Civil Procedure, and specifically treated each ground of the motion. Failure to do so does not here constitute reversible error. See Williams v. Larsen Construction Co., 255 Iowa 1149, 125 N.W.2d 248.

II. Cross-petitioners' three following assignments of error directly attack the defense of governmental immunity. They assert (1) the city is liable for negligently executing plans and specifications pertaining to a public work and for defective planning which is dangerous as a matter of law, (2) section 389.12, Code, 1962, is applicable and supersedes any theory of governmental immunity relating to public streets, and (3) the traffic lights and intersection area constituted a nuisance.

We will discuss the nuisance theory first. Cross-petitioners do not contend a traffic control device was improper at this intersection. The complaint is that it was dangerous and ineffective in its operation. Under the factual allegations here alleged we do not believe it would constitute a nuisance. This problem was recently reviewed in Hall v. Town of Keota, 248 Iowa 131, 141, 142, 79 N.W.2d 784, where we said:

"We think a distinction must be drawn between mere failures to keep the streets, parks, etc., in a proper state of repair, when a liability may result because of negligence, and, on the other hand, uses of the streets, or parks, resulting in injury to persons lawfully using them, which have no connection with the purposes for which they were intended. Thus, in Wheeler v. City of Fort Dodge, 131 Iowa 566, 108 N.W. 1057, 9 L. R. A., N. S., 146, a case much discussed by both contestants here, the injury resulted from a 'slide-for-life' wire which was stretched

across the street and from which a performer fell, striking the plaintiff. This had no proper relation to the intended use of the street and was held to be a nuisance. Thus awnings and windows projecting into the street from adjacent buildings, a covered viaduct running from the upper stories of buildings on opposite sides of the street, a rope stretched across the street, a dangerous boiler in an areaway under a street, and limbs falling from overhanging trees have all been held to be nuisances, the cases so deciding being cited and relied upon in Wheeler v. Fort Dodge, supra, at pages 570 and 571 of 131 Iowa, pages 1058 and 1059 of 108 N.W. Permitting the parking of buses and the establishment of loading zones in the street in front of plaintiff's place of business was held to be a nuisance, in Gates v. City of Bloomfield, 243 Iowa 671, 674, 675, 53 N.W.2d 279, 280, 281. In each of these cases there was a use of the street or an obstruction in or over it foreign to its primary purpose as a means of travel."

We therefore hold that the cross-petition does not allege sufficient facts to support the legal conclusion that the city had created a nuisance.

III. The other two assignments of error are a different matter. The right of a city to sue and be sued is established; it may be sued for negligence. Bowman v. City of Davenport, 243 Iowa 1135, 53 N.W.2d 249, 63 A. L. R.2d 853. But the rule of governmental immunity is recognized in this state. In Brown v. City of Sioux City, 242 Iowa 1196, 1204, 49 N.W.2d 853:

"It is the established rule in this state and in most all other jurisdictions that a municipality, in the exercise of its purely governmental functions, is not liable for negligence. But this rule of governmental immunity is to be strictly construed. As said in 63 C. J. S., Municipal Corporations, section 746, page 33: 'There has been a steady trend in the courts toward holding municipalities liable in tort.'

"And in New Mexico Products Co. v. New Mexico Power Co., 42 N. M. 311, 322, 77 P.2d 634, 641, it is stated: 'Where there is doubt as to whether the city is liable, the question will be resolved against the municipality, 43 C. J. 932; Schultz v. Phoenix, 18 Ariz. 35, 156 P. 75; Mayor, etc. of Birmingham v.

Starr, 112 Ala. 98, 20 So. 424; Pardini v. City of Reno, 50 Nev. 392, 263 P. 768.' "

While we construe the rule of governmental immunity as applied to cities and towns strictly we have recently refused to abandon the rule. Florey v. City of Burlington, 247 Iowa 316, 73 N.W.2d 770, Hall v. Town of Keota, supra, Moore v. Murphy, 254 Iowa 969, 119 N.W.2d 759, Boyer v. Iowa High School Athletic Association, 256 Iowa 337, 127 N.W.2d 606.

Hall v. Town of Keota also quoted Bliven v. City of Sioux City, 85 Iowa 346, 52 N.W. 246 (injury due to billboard falling on pedestrian) re the city's duties in relation to streets and sidewalks:

"This duty extends, not merely to the surface of the street or walk, *but to those things within its control which endanger the safety of those using the street or walk properly. * * * That condition may be due to improper construction, to poor materials, or other causes. It may be due to the presence of something which is a menace to the safety of the users of the way, as well as to imperfect construction or the absence of needed labor or material.* (Italics supplied.)"

Under the rules set forth in the foregoing cases it cannot be said the petition of cross-petitioners shows on its face that the defense of governmental immunity is involved. On the contrary the facts alleged, if true, would constitute a sufficient basis to sustain a finding that governmental immunity does not shield the city from liability in this case.

In Hall v. Town of Keota the city was alleged to have taken over the use of a heavy cast-iron light pole to support a stop sign and "No U Turn" sign; the bolts and nuts used to anchor the pole had rusted, the pole fell on a 4-year-old boy causing the alleged injuries. Preliminary to a discussion of the merits of the case, we commented generally on the problem of application of the rule of governmental immunity at page 135 of 248 Iowa and page 786 of 79 N.W.2d as follows:

"The question of the extent of governmental immunity from liability for torts is a difficult one. That it has perplexed this court for many years is apparent from a study of the many decisions found in our reports, some of which seem to support

the contentions of the appellants, and some those of the appellees. The briefs filed herein by the able counsel for the respective parties are replete with cases in which we have announced the rule that a city or town may not be held to respond in damages for injuries inflicted while it is performing a purely governmental function; or in which we have avoided the rule and held the municipality may be liable. The earlier cases generally seem to have stated the rule and adhered to it without much discussion or analysis, although even in these there are exceptions in which liability has been found. An attempt to analyze all of the cases bearing on this subject would necessitate an opinion of such length that its value would be lost in a welter of words. We think that the governing principle in this class of cases has emerged in our later cases, that it is right in theory and should be followed."

IV. Defendants maintain that the city, in installing traffic signal lights to warn and direct the traveling public, is exercising a governmental function and is not liable for planning the sequence of the signals or for installing said lights which are defective in operation. Assuming that the city was exercising a governmental function, nevertheless liability may arise. Florey v. City of Burlington and Hall v. Town of Keota indicate that governmental immunity does not necessarily follow in all cases where the act complained of is in exercise of a governmental function.

Florey at page 321 of 247 Iowa analyzed the common-law background for governmental immunity as applied to cities and towns:

"The municipality, like any private corporation, is subject to tort liability and the rule of respondeat superior, when engaged in purely proprietary activity. The problem arises when it performs governmental functions committed to it by the state. Such functions do not become proprietary by their delegation. Nevertheless tort liability may arise if the municipal corporation negligently fails to perform its governmental duty and dangerous conditions result which cause injury to one properly availing himself of the tendered service."

Of equal importance is the holding in Hall v. Town of Keota at page 136 of 248 Iowa:

"* * * Section 389.12 is herewith set out:

" 'They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances.'

"The Florey case deals with parks; but since the same statute applies also to streets, and we have held above that a sidewalk is a part of the street, the same rules must apply. The reasoning of the Florey case is that if a failure to perform the statutory duty imposed by section 389.12 results in injury to one lawfully using the service offered by the municipality, liability results, notwithstanding that the function involved is a purely governmental one. The case also holds that there is liability apart from the specific statute above set forth, quoting Judge Dillon's statement in Soper v. Henry County, 26 Iowa 264, 268. We think, however, that section 389.12, supra, is but a more specific delegation of power to cities and towns over their streets. It 'invests' them, by statute, with ' "supervision and control over their streets * * *" ' [247 Iowa 321, 73 N.W.2d 772] and brings them within the terms of the rule laid down by Judge Dillon."

The city maintains that the Florey and Hall holdings are in relation to care and maintenance of city streets and as such are an exception to the general rule. There is no indication that these opinions treat the subject as exceptions. Rather, they seek to discover the underlying common-law basis for the rule and to apply it in a rational fashion. As has been noted, those cases treat section 389.12 simply as a more specific delegation of the common-law duty referred to by Judge Dillon. Further, the installation of traffic signal lights, while specifically authorized by section 321.255, Code, 1962, is intimately connected with and a part of the duties imposed by section 389.12, quoted supra. Hence, these cases are germane to this issue.

V. Cross-defendant City of Cedar Rapids cites numerous cases for the proposition that installation of traffic signal lights to warn and direct the traveling public is a governmental function and the city is not liable in damages for negligence in planning the sequence of the signals or for installing said lights which are defective in operation.

McQuillin, Municipal Corporations, Third Ed., Revised, Volume 18, sections 53.39 to 53.42, page 224 et seq. cites many of the same cases but also reflects the same lack of uniformity in the holdings of various states as is noted in the opinions of the individual states. The subject was considered in an Illinois case where one of the traffic control signal poles was knocked down and entirely out of commission for about a week. The other three signals were permitted to operate without any other warning, the predictable intersection collision occurred. Johnston v. City of East Moline, 338 Ill. App. 220, 233, 87 N.E.2d 22, 28. The Illinois court after citing many of the cases cited by the City of Cedar Rapids, observed:

"We have examined a number of these cases and while they are persuasive they are not binding on this court and we believe that they are contrary to the principles established in this State in the Roumbos case and in the traffic control device cases cited in this opinion. Many of these cases from foreign jurisdictions are decided on the proposition that a city is liable for the physical defects in a street and that physical defects do not include traffic lights and signals operating in a defective manner. It seems to us that there is no basis in logic for this distinction. A physical fact was present in the green light facing the plaintiff and her husband in this case and inviting them to drive into and through the intersection. We are of the opinion that once the traffic lights were installed that the maintenance and operation of them should be on the same basis as the maintenance of any other structure or device affecting the street or its safety."

We think the holdings in the Florey and Hall cases impel a like result here.

We recently held that governmental immunity did not apply when the charge was improper maintenance of a pole that held up a "No U Turn" sign. We are now asked to hold that governmental immunity does apply to a stop-and-go sign that was allegedly defective and dangerous in its operation. We are unable to distinguish between the two cases either from the standpoint of potential for harm or statutory duty to keep the streets safe for the public use they are designed to serve. Lindstrom v. Mason City, 256 Iowa 83, 126 N.W.2d 292.

We hold therefore that the petition states a cause of action and governmental immunity does not apply to the facts as pleaded.—Reversed and remanded.

All JUSTICES concur.